# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

|  |  |  |
|---|---|---|
| CT CASH, LLC, | ) | |
| | ) | |
| | ) | **Cause No. 3:23-cv-00788** |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| ANNS BOYZ LOGISTICS INC., | ) | |
| NATSHA WILLIAMS, | ) | |
| and SEDRICKIOUS | ) | |
| WILLIAMS, | ) | |
| | ) | |
| | ) | *Demand for Jury Trial* |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff CT Cash, LLC ("Plaintiff" or "CT"), by and through its undersigned counsel, brings this complaint (the "Complaint") against Defendants Anns Boyz Logistics Inc. and Natsha and Sedrickious Williams (collectively, the "Defendants"), and in support thereof, respectfully states as follows:

## THE PARTIES

1.      Plaintiff CT Cash, LLC is a Delaware limited liability company, with its principal place of business at 2919 Commerce Street, Suite 215, Dallas, Texas 75226.

2.      Plaintiff CT Cash, LLC's sole member is Cloud Technologies, Inc., which is a Delaware corporation, with its principal place at 612 Howard Street. Suite 600, San Francisco, California 94105.

3.      Upon information and belief, Defendant Anns Boyz Logistics Inc. ("Anns Boyz") was and is a corporation formed and existing pursuant to the laws of the State of Alabama, with its principal place of business at 1013 Downtowner Blvd., Mobile, Alabama 36609.

4.      Upon information and belief, Defendant Natsha Williams is an individual citizen and resident of Georgia, residing at 794 Lorrimont Lane, Fairburn, Georgia, 30213.

5.      Upon information and belief, Defendant Sedrickious Williams is an individual citizen and resident of Georgia, residing at 794 Lorrimont Lane, Fairburn, Georgia, 30213.

## JURISDICTION AND VENUE

6.      The Court possesses jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because this action is between citizens of different states and involves an amount in controversy exceeding $75,000.00, exclusive of interest and costs.

7.     The Court has personal jurisdiction over Defendants because Defendants regularly conduct business in the State of Texas, including with respect to the claims described herein.

8.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims described herein occurred in this district.

**9.**     All payments and transactions between Plaintiff and Defendants took place in whole or in part in the Northern District of Texas, Dallas Division.

## FACTS

10.     Plaintiff provides an instant-pay solution for truck drivers.

11.     Anns Boyz is a motor carrier that provides interstate transportation services.

12.     Upon information and belief, Defendant Natsha Williams is the Co-Chief Executive Officer of Anns Boyz.

13.     Upon information and belief, Defendant Sedrickious Williams is the Co-Chief Executive Officer of Anns Boyz.

14.     On November 29, 2021, Defendant Sedrickious Williams filed a certificate of formation with the Alabama Secretary of State forming Anns Boyz (the "Actual Certificate").  A true and correct copy of the Actual Certificate is attached hereto as **Exhibit A** and incorporated herein by reference.

15.     On or about December 21, 2021, Plaintiff and Anns Boyz executed the Instant Pay Agreement ("Instant Pay Agreement"), CT Cash Third-Party Card Agreement ("Third-Party Card Agreement"), and CT Cash Services Agreement ("Services Agreement" and collectively, the "Agreements") entered into between Plaintiff and Anns Boyz, which, among other things, provided Anns Boyz with instant payment from Plaintiff for completed deliveries in exchange for Anns Boyz's accounts receivable, *i.e.*, a factoring agreement.   A true and correct copy of the Agreements are attached hereto as **Exhibits B**, **C,** and **D** and incorporated herein by reference.

16.     The Agreements contain mandatory venue provisions for venue in Dallas, Texas:

> Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if CT Cash so elects, be instituted in any court sitting in Dallas County, Texas or, if none, any court located in the State of Texas nearest the location of CT Cash (the "Acceptable Forums"). Carrier agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue.

**Exhibits B** § 21.   Exhibits C and D contain the following mandatory venue agreement:

> The parties agree that any legal proceedings between the parties arising under, arising out of, or relating to the relationship created by this Agreement shall be filed and or maintained within the applicable judicial district that includes Dallas, Texas.

**Exhibits C** § 10.3**,** and **D** § 10.2**.**

17.    Pursuant to the Agreements, Anns Boyz agreed to, among other things, (i) pay all required obligations; (ii) indemnify Plaintiff against third party claims; and (iii) refrain from making any false representations, covenants, or warranties to Plaintiff. *See* **Exhibit B** at §5(b)(ii), **Exhibit C** at §§ 3.2(h), 4.2 and 5.1(a) and (c), and **Exhibit D** at §§ 3.2(e), (f), and (g), 4.1, and 5.1(a) and (c).

18.    Transportation brokers, including Total Quality Logistics ("TQL"), notified Plaintiff that Anns Boyz knowingly and intentionally submitted for payment from Plaintiff several accounts receivable that resulted from fraud, insufficient carrier services, and insufficient documentation (collectively, the "Fraudulent Accounts"). A true and correct copy of the Fraudulent Accounts is attached hereto as **Exhibit E** and incorporated by reference herein.

19.    Anns Boyz knowingly and intentionally accepted payments totaling $105,332.88 from Plaintiff on the Fraudulent Accounts.

20.    Due to Anns Boyz's fraudulent and insufficient carrier services, brokers refused to repay Plaintiff for Anns Boyz's Fraudulent Accounts.

21.    Anns Boyz's insufficient carrier services also breached brokers' service agreements, resulting in several brokers filing insurance claims against Plaintiff.

22.    Pursuant to Section 5 of the Instant Pay Agreement, on January 12, 2023, Plaintiff sent a letter to Anns Boyz demanding the repurchase of Fraudulent

Accounts within 30 days.  A true and accurate copy of Plaintiff's demand letter is attached as **Exhibit F** and is incorporated by reference herein.

23.    Despite Plaintiff's demand, Anns Boyz has failed to repurchase the Fraudulent Accounts from Plaintiff under the Agreements.

24.    Instead, Defendant Natsha Williams responded to Plaintiff's demand, "you made me lose customers and loads because you just want to be an ass about my money!!  I hope TQL never pays and technically they don't have to because the owner of Ann's Boyz never signed agreement with CloudTrucks.  I'm not the owner of Ann's Boyz.  Don't contact me ever again!!!"  A true and correct copy of the text message is attached hereto as **Exhibit G** and incorporated by reference herein.

25.    Plaintiff discovered that Defendant Natsha Williams knowingly and intentionally submitted a fraudulent certificate of formation ("Fraudulent Certificate") rather than the Actual Certificate to induce Plaintiff's execution of the Agreements.  A true and correct copy of the Fraudulent Certificate is attached hereto as **Exhibit H** incorporated by reference herein.

26.    Plaintiff reasonably relied on the representations in Defendant Natsha Williams' Fraudulent Certificate, including that Defendant Natsha Williams was an authorized representative of Anns Boyz, because Defendant Natsha Williams' Fraudulent Certificate mirrored the formatting of the Actual Certificate. *See id.* and **Exhibit A.**

27.     Accordingly, Plaintiff executed the Agreements with Defendant Natsha Williams under the reasonable belief Defendant Natsha Williams could lawfully bind Anns Boyz.

28.     Defendant Sedrickious Williams ratified Defendant Natsha Williams' fraudulent conduct for Defendants Natsha and Sedrickious Williams' personal benefit by permitting Defendant Natsha Williams to submit the Fraudulent Certificate and accepting the benefits of the Agreements without properly executing the Agreements.

29.     Defendant Sedrickious Williams also ratified Defendant Natsha Williams' fraudulent conduct by accepting payment for Fraudulent Accounts for Defendants Natsha and Sedrickious Williams' personal benefit.

30.     Consequently, Plaintiff is entitled to recover damages from Defendants in an amount to be proven at trial of no less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88), plus the late charges equal to the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees.  *See* **Exhibits C** and **D** at §§ 2.1, 5.1.

## COUNT I—BREACH OF INSTANT PAY AGREEMENT AGAINST DEFENDANT ANNS BOYZ

31.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

32.    There exists a contract between Plaintiff and Anns Boyz in the Instant Pay Agreement.  *See* **Exhibit B.**

33.    Pursuant to the Instant Pay Agreement, Anns Boyz agreed to, among other things, repurchase an account in which a broker has "indicated an inability or unwillingness to pay when due because (i) Carrier did not provide evidence, in form and substance satisfactory to CT Cash in its sole discretion." *See id.* at § 5(b)(ii).

34.    At all material times, Plaintiff has fulfilled the conditions required of it under the Instant Pay Agreement.

35.    Anns Boyz has breached its contractual obligations under the Instant Pay Agreement Section 5(b)(ii) by failing to perform under the Instant Pay Agreement by submitting the Fraudulent Accounts and not paying Plaintiff with actual accounts receivable or other compensation.

36.    Despite demand, Anns Boyz has not paid the amounts owed to Plaintiff.

37.    Consequently, Plaintiff is entitled to recover damages from Anns Boyz in an amount to be proven at trial of no less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88), plus the default fees of 5%

per annum, plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees.  *See* **Exhibit B** at §§ 9.2, 16.

## COUNT II—BREACH OF THIRD-PARTY CARD AGREEMENT
## AGAINST DEFENDANT ANNS BOYZ

38.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

39.    There exists a contract between Plaintiff and Anns Boyz in the Third-Party Card Agreement.  *See* **Exhibit C.**

40.    Pursuant to the Third-Party Card Agreement, Anns Boyz agreed to, among other things, (i) pay all required obligations; (ii) indemnify Plaintiff against third party claims; and (iii) refrain from making any false representations, covenants, or warranties to Plaintiff.  *See id.* at §§ 3.2(e), (f), and (g), 4.1, and 5.1(a) and (c).

41.    At all material times, Plaintiff has fulfilled the conditions required of it under the Third-Party Card Agreement.

42.    Anns Boyz has breached its contractual obligations under the Third-Party Card Agreement, including, and without limitation: (i) Section 3.2(e), (f), and (g) and 5.1(a) by failing to perform under the Third-Party Card Agreement by submitting the Fraudulent Accounts and not paying Plaintiff with actual accounts receivable or other compensation; (ii) Section 5.1(c) by failing to perform under several brokers' service agreements, resulting in third party claims against Plaintiff;

and (iii) Section 4.1 by making false representations, warranties, and covenants to Plaintiff as to the Fraudulent Accounts.

43.    Despite demand, Anns Boyz has not paid the amounts owed to Plaintiff.

44.    Consequently, Plaintiff is entitled to recover damages from Anns Boyz in an amount to be proven at trial of no less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88), plus the late charges equal to the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees.  *See* **Exhibits C** and **D** at §§ 2.1, 5.1.

## COUNT III—BREACH OF SERVICE AGREEMENT AGAINST DEFENDANT ANNS BOYZ

45.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

46.    There exists a contract between Plaintiff and Anns Boyz in the Services Agreement.  *See* **Exhibit D.**

47.    Pursuant to the Services Agreement, Anns Boyz agreed to, among other things, (i) pay all required obligations; (ii) indemnify Plaintiff against third party claims; and (iii) refrain from making any false representations, covenants, or warranties to Plaintiff.  *See id.* at §§ 3.2(h), 4.2, and 5.1(a) and (c).

48.     At all material times, Plaintiff has fulfilled the conditions required of it under the Services Agreement.

49.     Anns Boyz has breached its contractual obligations under the Services Agreement, including, and without limitation: (i) Section 3.2(h) and 5.1(a) by failing to perform under the Services Agreement by submitting the Fraudulent Accounts and not paying Plaintiff with actual accounts receivable or other compensation; (ii) Section 5.1(c) by failing to perform under several brokers' service agreements, resulting in third party claims against Plaintiff; and (iii) Section 4.2 by making false representations, warranties, and covenants to Plaintiff as to the Fraudulent Accounts.

50.     Despite demand, Anns Boyz has not paid the amounts owed to Plaintiff.

51.     Consequently, Plaintiff is entitled to recover damages from Anns Boyz in an amount to be proven at trial of no less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88), plus the late charges equal to the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees. *See* **Exhibits C** and **D** at §§ 2.1, 5.1.

## COUNT IV—ACCOUNT STATED AGAINST DEFENDANT ANNS BOYZ

52.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

53.    Pursuant to Section 5 of the Instant Pay Agreement, Anns Boyz agreed to repurchase Fraudulent Accounts within 30 days if brokers refuse to repay Plaintiff.  *See* **Exhibit B**.

54.    Anns Boyz knowingly and intentionally accepted payments totaling $105,332.88 from Plaintiff on the Fraudulent Accounts.

55.    On January 12, 2023, Plaintiff notified Anns Boyz of TQL's refusal to repay Plaintiff and demanded that Anns Boyz repurchase Fraudulent Accounts by February 10, 2023.  *See* **Exhibit F**.

56.    Anns Boyz has failed to repurchase Fraudulent Accounts despite multiple requests for payment.

57.    As a result, Plaintiff is entitled to judgment in its favor and against the Anns Boyz in an amount to be proven at trial of no less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88), plus the late charges equal to the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees.  *See* **Exhibits C** and **D** at §§ 2.1, 5.1.

## <u>COUNT V—UNJUST ENRICHMENT AGAINST DEFENDANT ANNS BOYZ</u>

58.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

59.     As described above, Plaintiff provided $105,332.88 to Anns Boyz in exchange for accounts receivable, which were either fraudulent or resulted in insufficient carrier services or documentation.

60.     Anns Boyz received, and was enriched by, the benefit of $105,332.88 provided by Plaintiff but Plaintiff did not receive valid accounts receivable from Anns Boyz associated with that benefit.

61.     The benefit conferred upon Anns Boyz is at the expense of, and to the detriment of, Plaintiff.

62.     Anns Boyz has a legal and/or equitable obligation to reimburse Plaintiff.

63.     It is against equity and good conscience for Anns Boyz to retain the benefit of $105,332.88 from Plaintiff without reimbursement or restitution.

64.     As a result, Plaintiff is entitled to judgment in its favor and against the Anns Boyz in an amount to be proven at trial of no less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88), plus the late charges equal to the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, plus pre-judgment and post-judgment interest as

allowed by law, costs, and reasonable attorneys' fees.  *See* **Exhibits C** and **D** at §§ 2.1, 5.1.

<u>**COUNT VI—COMMON LAW FRAUD AGAINST**</u>

<u>**DEFENDANTS NATSHA AND SEDRICKIOUS WILLIAMS**</u>

65.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

66.    In connection with the execution of the Agreements, Defendant Natsha Williams made material representations to Plaintiff that she was authorized to act on behalf of Anns Boyz.  *See* **Exhibit H.**

67.    When Defendant Natsha Williams executed the Agreements, Defendant Natsha Williams knew she was not an authorized representative of Anns Boyz.  *See* **Exhibit A.**

68.    Defendants Natsha and Sedrickious Williams knowingly and intentionally accepted payments totaling $105,332.88 from Plaintiff on the Fraudulent Accounts.

69.    Several transportation brokers, including TQL, notified Plaintiff that Anns Boyz submitted Fraudulent Accounts.

70.    Pursuant to Section 5 of the Instant Pay Agreement, Plaintiff demanded that Defendants repurchase the Fraudulent Accounts.  *See* **Exhibit B.**

71.    Defendant Natsha Williams responded, "you made me lose customers and loads because you just want to be an ass about my money!!  I hope TQL never pays and technically they don't have to because the owner of Ann's Boyz never signed agreement with CloudTrucks.  I'm not the owner of Ann's Boyz.  Don't contact me ever again!!!"  *See* **Exhibit G.**

72.    Defendant Sedrickious Williams ratified Defendant Natsha Williams' material representations for Defendants Natsha and Sedrickious Williams' personal benefit by permitting Defendant Natsha Williams to submit the Fraudulent Certificate and accepting the benefits of the Agreements without properly executing the Agreements.

73.    Defendant Sedrickious Williams also ratified Defendant Natsha Williams' fraudulent conduct by accepting payment for Fraudulent Accounts for Defendants Natsha and Sedrickious Williams' personal benefit.

74.    Defendants Natsha and Sedrickious Williams intended to induce Plaintiff's execution and performance under the Agreements in exchange for the Fraudulent Accounts.

75.    Plaintiff actually and justifiably relied on Defendants' false representations and paid Defendants Natsha and Sedrickious Williams $105,332.88 on the Fraudulent Accounts; therefore, Plaintiff has suffered actual damages.

## COUNT VII— CONSPIRACY AGAINST

## DEFENDANT SEDRICKIOUS WILLIAMS

76.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

77.     On November 29, 2021, Defendant Sedrickious Williams filed the Actual Certificate naming himself as the authorized representative of Anns Boyz. *See* **Exhibit A.**

78.     Both Defendants Natsha and Sedrickious Williams served as co-Chief Executive Officers of Anns Boyz.

79.     Defendants Natsha and Sedrickious Williams agreed to submit the Fraudulent Certificate to induce Plaintiff's reliance on the material representation that Defendant Natsha Williams, rather than Defendant Sedrickious Williams, was the authorized representative of Anns Boyz.  *See* **Exhibit H.**

80.     On December 21, 2021, Plaintiff and Anns Boyz executed the Agreements using Defendant Natsha Williams' signature.  *See* **Exhibits B, C,** and **D.**

81.     On or about February 14, 2022, Defendants Natsha and Sedrickious Williams began submitting accounts receivable to Plaintiff for payment under the Agreements. *See* **Exhibit E.**

82.     Defendants Natsha and Sedrickious Williams knowingly and intentionally accepted payments totaling $105,332.88 from Plaintiff on the Fraudulent Accounts.

83.     Several transportation brokers, including TQL, notified Plaintiff that Anns Boyz submitted Fraudulent Accounts.

84.     Pursuant to Section 5 of the Instant Pay Agreement, Plaintiff contacted Defendant Natsha Williams for repayment on Fraudulent Accounts. *See* **Exhibit B.**

85.     Defendant Natsha Williams responded, "you made me lose customers and loads because you just want to be an ass about my money!!  I hope TQL never pays and technically they don't have to because the owner of Ann's Boyz never signed agreement with CloudTrucks.  I'm not the owner of Ann's Boyz.  Don't contact me ever again!!!" *See* **Exhibit G.**

86.     Plaintiff also emailed and mailed a demand letter to Defendant Sedrickious Williams, but he failed to repurchase the Fraudulent Accounts on Anns Boyz' behalf as well. *See* **Exhibit F.**

87.     Accordingly, Defendant Sedrickious Williams' agreement with Defendant Natsha Williams to fraudulently execute the Agreements has resulted in Plaintiff's actual damages.

88.    Defendant Sedrickious Williams' agreement with Defendant Natsha Williams to assist in submitting Fraudulent Accounts for payment has also resulted in Plaintiff's actual damages.

89.    As a result, Plaintiff is entitled to judgment in its favor and against Defendant Sedrickious Williams in an amount to be proven at trial of no less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88), plus the late charges equal to the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees. *See* **Exhibits C** and **D** at §§ 2.1, 5.1.

## COUNT VIII—PIERCING THE CORPORATE VEIL AGAINST DEFENDANTS NATSHA AND SEDRICKIOUS WILLIAMS

90.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

91.    On November 29, 2021, Defendant Sedrickious Williams filed the Actual Certificate naming himself as the authorized representative of Anns Boyz. *See* **Exhibit A.**

92.    On December 21, 2021, Plaintiff and Anns Boyz executed the Agreements with Defendant Natsha Williams' signature.

93.    Plaintiff requested the repurchase of Fraudulent Accounts.

94.     Defendant Natsha Williams responded "you made me lose customers and loads because you just want to be an ass about my money!!  I hope TQL never pays and technically they don't have to because the owner of Ann's Boyz never signed agreement with CloudTrucks.  I'm not the owner of Ann's Boyz.  Don't contact me ever again!!!"  *See* **Exhibit G**.

95.     Plaintiff discovered that Defendant Natsha Williams knowingly and intentionally submitted the Fraudulent Certificate rather than the Actual Certificate to induce Plaintiff's execution of the Agreements. *See* **Exhibit H.**

96.     Defendant Sedrickious Williams ratified Defendant Natsha Williams' fraudulent conduct by knowingly and intentionally authorizing her to induce Plaintiff's execution of the Agreements for Defendants Natsha and Sedrickious Williams' personal benefit.

97.     Defendant Sedrickious Williams also ratified Defendant Natsha Williams' fraudulent conduct by knowingly and intentionally accepting payments totaling $105,332.88 from Plaintiff on the Fraudulent Accounts for Defendants Natsha and Sedrickious Williams' personal benefit.

98.     Defendants have failed to repurchase Fraudulent Accounts despite multiple requests for payment.

99.     As a result, Plaintiff is entitled to judgment in its favor and against Defendants Natsha and Sedrickious Williams in an amount to be proven at trial of

no less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88), plus the late charges equal to the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees. *See* **Exhibits C** and **D** at §§ 2.1, 5.1.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing factual allegations and applicable legal theories, whether stated herein above or determined at a later time based upon the evidence presented at trial, Plaintiff CT Cash, LLC respectfully requests judgment in its favor against Defendants Anns Boyz Logistics Inc. and Natsha and Sedrickious Williams, on all claims for relief and providing the following:

1.    Damages in an amount not less than One Hundred Five Thousand Three Hundred Thirty Two and 88/100 dollars ($105,332.88);

2.    Late charges equal to the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less;

3.    Pre- and post-judgment interest to the extent permitted by law;

4.    Reasonable attorneys' fees and costs;

5.    An award of punitive damages to Plaintiff in an amount to be proven at trial;

6.    All other just and appropriate relief determined by the Court.

Respectfully submitted,

By: /s/*Vic Houston Henry*
Vic Houston Henry
TBA No. 09484250
vhhenry@hoaf.com
Emileigh Hubbard
TBA No. 24076717
ehubbard@hoaf.com
**HENRY ODDO AUSTIN & FLETCHER,**
    **A Professional Corporation**
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 658-1900
Facsimile: (214) 658-1919


**BENESCH, FRIEDLANDER, COPLAN, &**
    **ARONOFF LLP**

Kevin M. Capuzzi (DE No.  5462)
John C. Gentile (DE No. 6159)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7063
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com
      jgentile@beneschlaw.com

**ATTORNEYS FOR PLAINTIFF CT CASH,
LLC**